**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SARAH SACHA | ) | |
| c/o Hux Law Firm, LLC | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | Judge _____ |
| | ) | |
| v. | ) | |
| | ) | **COMPLAINT WITH** |
| CITY OF NORTH ROYALTON | ) | **JURY DEMAND ENDORSED** |
| c/o Mayor Paul F. Marnecheck | ) | **HEREON** |
| 14600 State Road | ) | |
| North Royalton, Ohio 44133 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Sarah Sacha, by and through undersigned counsel, for her Complaint against Defendant City of North Royalton, states as follows:

**PARTIES**

1. Plaintiff Sarah Sacha ("Mrs. Sacha") is a natural person and a citizen of the United States who at all relevant times resided in Cuyahoga County, Ohio.

2. At all times relevant to this Complaint, Mrs. Sacha was employed by Defendant as a corrections officer assigned to the jail operated by the North Royalton Police Department.

3. Defendant City of North Royalton (the "City") is a municipal corporation organized and existing under the laws of the State of Ohio, with its principal offices located in Cuyahoga County, Ohio. The City operates the North Royalton Police Department and the jail in which Mrs. Sacha worked, and it was Mrs. Sacha's employer.

4. The North Royalton Police Department is an administrative arm of the City and is not a separate legal entity capable of being sued in its own name. The City is the proper party

1

defendant and was named as the respondent in the administrative proceedings described below.

5. At all relevant times, the City employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and was an "employer" within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b); the Americans with Disabilities Act, 42 U.S.C. § 12111(5); and Ohio Revised Code § 4112.01(A)(2).

6. At all relevant times, the City was a "person" and a "political subdivision" acting under color of state law for purposes of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over Mrs. Sacha's federal claims under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights), because those claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.; and 42 U.S.C. § 1983.

8. This Court has supplemental jurisdiction over Mrs. Sacha's state-law claims under 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy, and the same nucleus of operative facts, as her federal claims.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because the City resides in this District and because the unlawful employment practices alleged in this Complaint were committed within this District, in Cuyahoga County,

2

Ohio, where Mrs. Sacha was employed and where the relevant employment records are maintained.

10. Assignment to the Eastern Division is proper under Local Rule 3.8 because the claims arose in Cuyahoga County, Ohio.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. On March 3, 2025, Mrs. Sacha filed a sworn Charge of Discrimination against the North Royalton Police Department with the Ohio Civil Rights Commission ("OCRC"), which was dual-filed with the United States Equal Employment Opportunity Commission ("EEOC"), and designated OCRC Charge No. CLEB4(013103)03032025 and EEOC Charge No. 22A-2025-02360. In that charge, Mrs. Sacha alleged discrimination on the basis of sex (including sexual harassment), disability, and retaliation, and identified, among other things, sexual harassment by a coworker, the City's failure to conduct a proper investigation, the denial of sick time related to her anxiety, and retaliatory scheduling.

12. On or about October 7, 2025, Mrs. Sacha filed a second sworn Charge of Discrimination with the OCRC, dual-filed with the EEOC, alleging that the City retaliated against her, including by disciplining her, placing her on administrative leave, and terminating her employment on June 12, 2025, because she had engaged in protected activity, including the filing of her OCRC charge and her continued complaints of a hostile work environment.

13. On December 18, 2025, the OCRC issued a Letter of Determination and a Notice of Right to Sue as to Charge No. CLEB4(013103)03032025 (EEOC No. 22A-2025-02360),

3

advising Mrs. Sacha of her right to bring a civil action under Ohio Revised Code Chapter 4112.

14. On May 1, 2026, the EEOC issued a Determination and Notice of Rights as to EEOC Charge No. 22A-2025-02360, notifying Mrs. Sacha of her right to file a civil action under federal law within ninety (90) days of her receipt of that notice.

15. This Complaint is filed within ninety (90) days of Mrs. Sacha's receipt of the EEOC's Notice of Right to Sue and within the limitations period applicable to her claims under Ohio Revised Code Chapter 4112, the running of which was tolled during the pendency of the OCRC proceedings.

16. Mrs. Sacha has satisfied all conditions precedent and exhausted all administrative remedies required to bring the claims asserted in this Complaint. Her retaliation claims are, in addition, reasonably related to and grew out of the conduct alleged in her charges of discrimination.

## FACTUAL ALLEGATIONS
### *Mrs. Sacha's Employment*

17. Mrs. Sacha, a woman, was hired by the City as a corrections officer in or about 2022 and worked in that capacity at the North Royalton jail until her termination on June 12, 2025.

18. Throughout her employment, Mrs. Sacha performed the essential functions of her position and met the City's legitimate expectations. In August 2024, before the events described below, Mrs. Sacha continued to perform her corrections-officer duties.

19. At all relevant times, Mrs. Sacha has been diagnosed with an anxiety disorder for which she receives treatment, including medication prescribed and monitored by a psychiatrist

affiliated with the Cleveland Clinic. Her anxiety disorder is a physical or mental impairment that substantially limits one or more major life activities, including sleeping, concentrating, thinking, and interacting with others, as well as the operation of major bodily functions, including neurological and brain function.

### *The Sexual Harassment by Alfred Gilbert*

20. Alfred Gilbert ("Gilbert") was, at all relevant times, a corrections officer employed by the City and a coworker of Mrs. Sacha.

21. Gilbert is also employed as a sergeant at the Mantua Police Department.

22. Beginning in or about September 2024, Gilbert subjected Mrs. Sacha to repeated, unwelcome physical touching and sexual harassment because of her sex.

23. On September 8, 2024, Gilbert grabbed the strings of Mrs. Sacha's radio holster and manipulated them.

24. On the same day, Gilbert touched Mrs. Sacha's chest where her breasts are and pushed up on her nose with his finger when she looked down.

25. Later that day, Gilbert reached for a handcuff key resting on Mrs. Sacha's lap near her groin. Mrs. Sacha pushed his hand away and told him, "Stop touching me."

26. Over the course of that same day, Gilbert also touched Mrs. Sacha's chest, leg, and face, and pulled her hair.

27. On December 15, 2024, Gilbert rubbed Mrs. Sacha's shoulders, patted her back multiple times, gave her repeated hugs, and touched her hand and head.

28. On December 28, 2024, Gilbert approached Mrs. Sacha and, without permission, began touching and scrolling on the Apple Watch she wore on her wrist, and then hugged her.

5

29.   Mrs. Sacha did not welcome any of this touching. Gilbert's conduct was uninvited, offensive, and directed at her because of her sex.

### Additional Harassing Conduct and a Hostile Work Environment

30.   Gilbert's harassment was not limited to physical touching.

31.   On December 28, 2024, Mrs. Sacha arrived for her shift and found that Gilbert had drawn, on the whiteboard in the staff office, a heart containing her badge number and the badge number of a male coworker, CO John Landon Hart.

32.   Throughout that shift, Gilbert repeatedly told CO Hart that Mrs. Sacha was his "girl" and made comments suggesting the two were in a romantic relationship, including telling CO Hart to "Go get your girl."

33.   CO Hart, who was in a committed relationship, asked Gilbert to stop, but Gilbert continued.

34.   Gilbert regularly spoke about Mrs. Sacha in a fixated manner when she was not present, as reported to Mrs. Sacha by coworkers, including union representative CO Lucinda Barber and CO Hart.

35.   Gilbert also made sexual remarks to coworkers about Mrs. Sacha, and made sexual comments regarding Mrs. Sacha's younger sister.

36.   On more than one occasion, Gilbert became aggressive and hostile toward Mrs. Sacha in the workplace.

37.   During one incident, in the presence of CO Hart, inmates, and Jail Administrator Marty Toukonen, Gilbert yelled at Mrs. Sacha that "no one can stand working with her" and told Jail Administrator Toukonen that he needed to "put her in her place."

6

38.     On December 28, 2024, after Mrs. Sacha discreetly reminded Gilbert to properly observe an inmate during an alcohol-breath test, Gilbert angrily told her to "be quiet" and stated, in front of a coworker and an inmate, that she "doesn't know what she is talking about most of the time."

39.     Gilbert's conduct was sufficiently severe and pervasive that it altered the terms and conditions of Mrs. Sacha's employment and created a work environment that a reasonable person would find, and that Mrs. Sacha did find, hostile and abusive.

### *Mrs. Sacha Reports the Harassment*

40.     On December 29, 2024, Mrs. Sacha reported Gilbert's sexual harassment and touching to Jail Administrator Marty Toukonen ("Toukonen"), in the presence of her union representative, CO Lucinda Barber.

41.     Toukonen was a supervisor and part of the City's management with authority over Mrs. Sacha's work.

42.     Rather than treat the report seriously, Toukonen asked Mrs. Sacha whether Gilbert "was just joking," and asked "why" Gilbert was touching her.

43.     CO Barber responded that the conduct was not a joke, that Gilbert did not behave this way toward other employees, and that it was inappropriate and needed to stop.

44.     The next day, during a shift alone with Mrs. Sacha, Toukonen returned to the subject and suggested that "mental health" might explain Gilbert's behavior.

45.     Toukonen then posed a series of dismissive hypotheticals. He asked, for example, whether Mrs. Sacha would consider it sexual harassment if someone grabbed a taser from

her duty belt, and he compared Gilbert's conduct to another coworker's habit of commenting that people on television were "hot."

46. Toukonen asked Mrs. Sacha whether she wanted the City to "make an example" of Gilbert, and refused to explain the investigation process to her.

47. Toukonen had an undisclosed conflict of interest. Gilbert is Toukonen's superior officer at the Mantua Police Department, where Gilbert is a sergeant and Toukonen is a patrol officer, and the two are close friends, a fact well known in the jail.

48. Despite this conflict, Toukonen was permitted to receive and participate in the handling of Mrs. Sacha's complaint.

### The City Continues to Schedule Mrs. Sacha with Her Harasser

49. Mrs. Sacha told Toukonen that she feared for her safety when working with Gilbert.

50. Notwithstanding that report, the City scheduled Mrs. Sacha to work with Gilbert on at least two occasions after she reported the harassment, including on January 25, 2025 and February 2, 2025, requiring Mrs. Sacha to object each time.

### The City's Inadequate and Biased Investigation

51. The City's investigation of Mrs. Sacha's complaint was neither prompt, thorough, nor impartial.

52. Mrs. Sacha was interviewed twice, in the presence of a human-resources representative, Holly Moro; the City's Law Director and City Attorney, James Budzik; and CO Barber.

53. The City represented that it had retained neutral outside counsel to investigate, when in fact the investigation was conducted by Mr. Budzik, the City's own attorney.

54. During Mrs. Sacha's interview, Mr. Budzik possessed, in his investigation file, a photograph taken from Mrs. Sacha's personal social media depicting her in a bikini, which had no legitimate relevance to her complaint of sexual harassment.

55. When Mrs. Sacha asked why he had the photograph, Mr. Budzik refused to answer and returned it to his file. The photograph was omitted from the copy of the investigation file later provided to Mrs. Sacha.

56. The City failed to interview the witnesses Mrs. Sacha identified, including CO Hart, CO Jonathan Seegert, and CO Barber, each of whom had witnessed relevant conduct.

57. The City also failed to interview the coworkers to whom Gilbert had made sexual comments about Mrs. Sacha's sister.

58. On February 14, 2025, the City informed Mrs. Sacha that her complaint was deemed "unfounded" and that no action would be taken.

59. The City reached that conclusion even though its own investigation reflected that Gilbert had admitted to at least some of the conduct, including pulling Mrs. Sacha's hair and drawing the heart with the badge numbers.

60. The City took no meaningful corrective action against Gilbert.

### *Denial of Sick Leave Related to Mrs. Sacha's Disability*

61. On January 29, 2025, Mrs. Sacha advised Toukonen by text message that she might need to use sick time for her shift the following day because of the stress and anxiety caused by the harassment and the ongoing investigation.

62. Toukonen was aware that Mrs. Sacha had a diagnosed anxiety condition.

63. Toukonen responded that "that type of usage would not be justified as sick time."

64. Discouraged and fearful that her request would be denied and that she would face discipline, Mrs. Sacha did not use the sick time she needed.

65. On information and belief, the City granted a similar request for a "mental health day" made by another corrections officer, Jessica Ferris, without objection, demonstrating that the denial of Mrs. Sacha's request was not consistent with the City's ordinary practice.

### *Retaliatory Scheduling*

66. On February 26, 2025, Mrs. Sacha learned that a male coworker with less seniority than she had been given a schedule with numerous weekends off, while Mrs. Sacha, who had greater seniority, was scheduled to work every weekend.

67. When Mrs. Sacha asked Toukonen how the schedule had been determined, he replied that it was based on "Department Needs and Seniority."

68. Shortly thereafter, Toukonen sent Mrs. Sacha a message plainly intended for someone else, stating: "In her mind, she probably thinks it's not fair. In my mind, I don't care. She needs to put the time in to even be considered for seniority, not to mention she needs to act appropriately."

### *Mrs. Sacha's Continued Protected Activity*

69. On March 24, 2025, Mrs. Sacha complained that a male coworker had inappropriately used the jail's closed-circuit camera system to view CCTV footage of a female inmate while she was undressed, conduct that was captured on camera.

70. On May 3, 2025, Mrs. Sacha was informed that no disciplinary action would be taken against the male coworker.

71.     On April 27, 2025, Mrs. Sacha and CO Hart filed a formal grievance, pursuant to department policy and chain of command, concerning the City's failure to properly compensate them for training they had attended.

72.     On May 1, 2025, the Chief of Police refused to compensate Mrs. Sacha and CO Hart for the unpaid training and accused them of having been "very disruptive" during the training and of "making the department look bad."

### *Administrative Leave and Termination*

73.     On May 29, 2025, less than one month after the Chief's accusations and while her OCRC charge remained pending, the City placed Mrs. Sacha on administrative leave by letter from Chief of Police Keith Tarase.

74.     On June 12, 2025, less than two weeks after being placed on leave, the City terminated Mrs. Sacha's employment.

75.     During the termination, Mrs. Sacha's pending OCRC charge was expressly referenced.

76.     The City's stated reasons for placing Mrs. Sacha on leave and terminating her employment are pretextual.

77.     The close temporal proximity between Mrs. Sacha's protected activity and the adverse actions, the express reference to her pending OCRC charge at the time of her termination, and the City's disparate treatment of Mrs. Sacha demonstrate that the City acted because of her protected activity and her sex.

78.     As final decision-makers for the City with respect to the discipline and termination of jail personnel, the Chief of Police and other City officials acted as the City's policymakers,

and the City ratified and adopted the discriminatory and retaliatory conduct described above, including through its Law Director's handling of the investigation.

## COUNT I

### *Hostile Work Environment / Sexual Harassment in Violation of Title VII, 42 U.S.C. § 2000e-2(a)*

79. Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

80. Mrs. Sacha is a member of a protected class on the basis of her sex (female).

81. Mrs. Sacha was subjected to unwelcome sexual harassment, including repeated unwanted physical touching and sexually charged and demeaning conduct, as described above.

82. The harassment was based on Mrs. Sacha's sex and was sufficiently severe or pervasive to alter the terms and conditions of her employment and to create a hostile and abusive working environment.

83. The City knew or should have known of the harassment, including because Mrs. Sacha reported it to a jail administrator and to human resources, yet failed to take prompt and appropriate corrective action. Instead, the City conducted a biased and inadequate investigation, deemed her complaint "unfounded," declined to discipline the harasser, and continued to schedule Mrs. Sacha to work with him. The City is therefore liable for the hostile work environment.

84. As a direct and proximate result of the City's violation of Title VII, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

## COUNT II

### *Retaliation in Violation of Title VII, 42 U.S.C. § 2000e-3(a)*

85.　Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

86.　Mrs. Sacha engaged in protected activity under Title VII, including by reporting and opposing sexual harassment, by filing charges of discrimination with the OCRC and EEOC, and by opposing other conduct she reasonably believed to be unlawful.

87.　The City knew of Mrs. Sacha's protected activity.

88.　The City subjected Mrs. Sacha to materially adverse actions, including denying her the use of sick leave, assigning her a less favorable work schedule, accusing her of misconduct, placing her on administrative leave, and terminating her employment.

89.　A causal connection exists between Mrs. Sacha's protected activity and the adverse actions, as shown by, among other things, the close temporal proximity between them and the express reference to her pending OCRC charge at the time of her termination.

90.　The City's proffered reasons for the adverse actions are pretextual, and the City acted with retaliatory motive.

91.　As a direct and proximate result of the City's violation of Title VII, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

13

## COUNT III

### *Disability Discrimination and Failure to Accommodate in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.*

92.    Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

93.    Mrs. Sacha is an individual with a disability within the meaning of the ADA because she has an impairment, a diagnosed anxiety disorder, that substantially limits one or more major life activities; she has a record of such an impairment; and/or she was regarded by the City as having such an impairment.

94.    Mrs. Sacha was a qualified individual who, with or without reasonable accommodation, could perform the essential functions of her corrections-officer position.

95.    The City had notice of Mrs. Sacha's disability, including through her communications with Toukonen, and Mrs. Sacha sought a reasonable accommodation, namely the limited use of available sick leave, for symptoms related to her disability.

96.    The City failed to engage in the interactive process in good faith and denied Mrs. Sacha the requested accommodation, even though the accommodation was reasonable and would not have imposed an undue hardship, and even though the City had granted comparable leave to another employee.

97.    The City also subjected Mrs. Sacha to adverse treatment because of her disability.

98.    As a direct and proximate result of the City's violation of the ADA, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

14

## COUNT IV

### *Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203*

99. Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

100. Mrs. Sacha engaged in activity protected by the ADA, including by requesting a reasonable accommodation for her disability and by opposing the City's failure to accommodate her.

101. The City subjected Mrs. Sacha to materially adverse actions, including the denial of leave, discipline, administrative leave, and termination, because of her protected activity.

102. A causal connection exists between Mrs. Sacha's protected activity and the adverse actions, and the City's stated reasons are pretextual.

103. As a direct and proximate result of the City's violation of the ADA, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

## COUNT V

### *Denial of Equal Protection in Violation of 42 U.S.C. § 1983*

104. Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

105. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution confers on Mrs. Sacha the right to be free from sex-based discrimination and harassment by a governmental employer.

15

106. Acting under color of state law, the City, through its officials and final policymakers, intentionally discriminated against Mrs. Sacha because of her sex by subjecting her to a hostile work environment, failing to remedy known harassment, and treating her less favorably than similarly situated male employees.

107. The deprivation of Mrs. Sacha's constitutional rights resulted from the City's official policies, customs, or practices and from the decisions and ratification of officials with final policymaking authority for the City, including the Chief of Police and the City's Law Director, who, respectively, made the decision to terminate Mrs. Sacha's employment and directed the deficient investigation of her complaint. The City acted with deliberate indifference to Mrs. Sacha's constitutional rights.

108. As a direct and proximate result of the City's violation of 42 U.S.C. § 1983, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

**COUNT VI**

*Sex Discrimination and Sexual Harassment in Violation of Ohio Revised Code § 4112.02(A)*

109. Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

110. Ohio Revised Code § 4112.02(A) makes it an unlawful discriminatory practice for an employer to discriminate against an employee in the terms, conditions, or privileges of employment because of the employee's sex.

111. The City subjected Mrs. Sacha to unwelcome, severe or pervasive sexual harassment and a hostile work environment because of her sex, and, despite its knowledge of the harassment, failed to take prompt and appropriate corrective action, as described above.

112. As a direct and proximate result of the City's violation of Ohio Revised Code Chapter 4112, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

## COUNT VII

### *Disability Discrimination and Failure to Accommodate in Violation of Ohio Revised Code § 4112.02(A)*

113. Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

114. At all relevant times, Mrs. Sacha had a disability within the meaning of Ohio Revised Code § 4112.01(A)(13), was able to safely and substantially perform the essential functions of her position, and was entitled to reasonable accommodation of her disability.

115. The City discriminated against Mrs. Sacha because of her disability and failed to provide a reasonable accommodation, namely the limited use of available sick leave, despite having notice of her disability and her need for accommodation, and despite the absence of any undue hardship, as described above.

116. As a direct and proximate result of the City's violation of Ohio Revised Code Chapter 4112, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

## COUNT VIII

### *Retaliation in Violation of Ohio Revised Code § 4112.02(I)*

117. Mrs. Sacha incorporates by reference each of the preceding paragraphs of this Complaint as if fully restated herein.

118. Ohio Revised Code § 4112.02(I) makes it an unlawful discriminatory practice to discriminate against any person because that person has opposed an unlawful discriminatory practice or has made a charge, testified, assisted, or participated in any manner in an investigation or proceeding under Chapter 4112.

119. Mrs. Sacha engaged in protected activity, including by opposing sexual harassment and disability discrimination and by filing charges of discrimination with the OCRC.

120. The City subjected Mrs. Sacha to materially adverse actions, including the denial of leave, discipline, administrative leave, and termination, because of her protected activity, and the City's stated reasons are pretextual, as described above.

121. As a direct and proximate result of the City's violation of Ohio Revised Code Chapter 4112, Mrs. Sacha has suffered and will continue to suffer damages, including lost wages, salary, and benefits; lost future earning capacity; and emotional distress, humiliation, and mental anguish, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sarah Sacha respectfully requests that this Court enter judgment in her favor and against Defendant City of North Royalton, and award the following relief:

a. A declaratory judgment that the City's conduct violated Mrs. Sacha's rights under Title VII, the Americans with Disabilities Act, 42 U.S.C. § 1983, and Ohio Revised Code Chapter 4112;

b. An order reinstating Mrs. Sacha to her position with full seniority and benefits or, in lieu of reinstatement, an award of front pay;

c. An award of back pay and lost benefits, with prejudgment interest;

d. Compensatory damages for Mrs. Sacha's emotional distress, humiliation, mental anguish, and other injuries, in an amount to be determined at trial and in excess of $75,000;

e. Appropriate injunctive and equitable relief, including an order requiring the City to remedy and to refrain from further unlawful employment practices;

f. An award of reasonable attorneys' fees, expert fees, and the costs of this action pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, 42 U.S.C. § 1988, and Ohio Revised Code Chapter 4112;

g. Pre-judgment and post-judgment interest as allowed by law; and

h. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff Sarah Sacha hereby demands a trial by jury on all issues so triable.


Respectfully submitted,

/s/ James J. Hux
James J. Hux (0092992)
HUX LAW FIRM, LLC
5210 Herringbone Dr. #303
Cincinnati, Ohio 45227
Phone: (937) 315-1106
Fax: (216) 359-7760
jhux@huxlawfirm.com
Counsel for Plaintiff Sarah Sacha

20